UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOLLY S.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-5786 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by discounting the opinions of three doctors regarding her mental impairments. Dkt. 7. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 49 years old, has a high school education and has worked as an apartment manager, apartment maintenance worker, caregiver, and nanny. Dkt. 5, Administrative Record (AR) 29-30. Plaintiff applied for benefits in January 2015, alleging disability as of December 29, 2012. AR 78. Plaintiff's application was denied initially and on reconsideration. AR 77, 90. After the ALJ conducted a hearing on March 2017, the ALJ issued

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

a decision finding Plaintiff not disabled. AR 37, 13-31.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the December 2012 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: rheumatoid arthritis; chronic pain due to cervical spine degenerative disc disease with radiculopathy, status post fusion, and lumbar degenerative disc disease; fibromyalgia; and diabetes mellitus.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work. She cannot reach overhead or climb ladders, ropes, or scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She must avoid exposure to vibration and hazards. She can frequently handle, finger, and feel.

**Step four:** Plaintiff can perform past relevant work as an apartment manager.

**Step five:** In the alternative, as there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 14-31. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.[3]

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff contends the ALJ erred by rejecting mental limitations opined by three doctors, and consequently failing to include any mental limitations in the RFC.[4] The Court notes that the record is sparse with regard to mental health. Because Plaintiff did not seek any treatment for mental impairments, the only relevant opinions in the record are from nontreating doctors. Plaintiff's own function report alleged only physical impairments. AR 228. At the hearing before the ALJ, Plaintiff's attorney's opening statement mentioned only physical impairments. AR 43.

**A.      Examining Psychologist W. Michael Rogers, Psy.D.**

Dr. Rogers examined Plaintiff in April 2015 and provided this functional assessment:

---

[4] Although Plaintiff frames the alleged error as finding her mental impairments nonsevere at step two, any error is harmless at that step because the ALJ found in her favor and proceeded to step three. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

> The claimant appears to have the capacity to reason and to understand. Memory functioning seems largely intact, with immediate being impaired based upon the brief screening. Concentration and persistence are likely to be based upon the claimant's current level of experienced pain. During the interview there is some evidence of distractibility—she reports due to pain. Regarding social/ interpersonal functioning, the claimant comes across as fairly easy to engage. She reports a preference to be with family and friends over isolation.

AR 760. An ALJ may only reject the uncontradicted opinion of an examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ generally accepted Dr. Rogers' opinions, but rejected his opinions on diminished memory, concentration, and persistence as inconsistent with the record. AR 28.

**1.　Memory**

Substantial evidence supports the ALJ's finding that the record generally showed intact memory. AR 28. In July and November 2013 office visits, mental status examinations showed that Plaintiff's memory was "[i]ntact for recent and remote events." AR 345, 337. Plaintiff argues that the office visits were focused on physical impairments, and the mental health findings were cursory and performed by non-specialists in mental health. Dkt. 7 at 3-4. Although the visits were primarily related to Plaintiff's neck, the mental status examinations were relatively thorough, assessing judgment, insight, orientation, mood, affect, and memory, both recent and remote. AR 337, 345. Moreover, Dr. Rogers' assessment, performed by a mental health specialist and focused entirely on Plaintiff's mental health, similarly showed intact recent and remote memory. AR 759, 760. Dr. Rogers' findings indicated that Plaintiff was able to recall three items after a five-minute delay and was able to recall past presidents. AR 759. Although immediate memory—measured by the ability to repeat numbers back to the examiner—seemed impaired, Dr. Rogers' conclusion was that, overall, "[m]emory functioning seems largely intact…." AR 760; AR 759. In other words, there was little functional

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

significance to the apparent deficit in immediate recall.  And Plaintiff has not identified any functional limitations that should have been included in the RFC based on the single finding that she could repeat back a number no more than two digits long.

The Court concludes the ALJ did not err by declining to include memory limitations in the RFC.

### 2. Concentration and Persistence

The ALJ rejected concentration and persistence limitations based on pain because Plaintiff's pain was well controlled with medication.  AR 28.  Plaintiff argues that the ALJ cherry-picked or mischaracterized the evidence she cited in support.  Dkt. 7 at 4.  The records the ALJ cited provide substantial evidence to support her finding the Plaintiff's pain was managed.  Plaintiff was "exercising five days a week and riding her bike up to 76 minutes" and overall "doing really well" in April 2014 despite a neck pain level of six out of ten.  AR 461.  In May 2015, Plaintiff was experiencing hand and ankle pain that she was managing with increased oxycodone, keeping herself busy, ibuprofen, ice, and heat.  AR 798-99.  In July 2015, Plaintiff was "80 percent better" with a new medication, plaquenil, despite some residual pain.  AR 864.  In October 2015, Plaintiff's current pain level was zero out of ten.  AR 1044.  With an increase in plaquenil, Plaintiff was "90 percent better" overall, despite having a flare on the day of the office visit in April 2016.  AR 1061.  In September and November 2016, Plaintiff reported that the addition of methotrexate was "working well for her" and led to "improvement in joint pains, swelling and the morning stiffness…."  AR 1095, 1117.  Although she experienced flare-ups in the winter weather, pain medication and ice helped.  AR 1117.  The ALJ also cited a few records where Plaintiff rated her health on a scale between "Very Well" and "Very Poorly."  Over time her rating improved, moving from approximately the midpoint to close to "Very Well."  AR

1091, 1132, 1252.

Plaintiff cites a few additional records where she reported breakthrough pain or a pain level of five or six out of ten to her doctors. Dkt. 7 at 5-6 (citing AR 1075, 1095, 1239). These records do not change the overall tenor of the evidence. The ALJ's interpretation of the evidence, that Plaintiff's medications were effective overall and that she was able to manage breakthrough pain, was a rational interpretation and thus must be upheld even if other rational interpretations are possible. *See Burch*, 400 F.3d at 680-81.

The Court concludes the ALJ did not err by declining to include limitations on concentration and persistence in the RFC based on Dr. Rogers' opinions.

**B.     Nonexamining State Agency Psychologists**

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

**1.     Bruce Eather, Ph.D.**

In the state agency's initial consideration of Plaintiff's application, Dr. Rogers' opinion was summarized as follows: "The claimant appears to have the capacity to reason and to understand.  Memory functioning seems largely intact, with immediate being impaired based upon the brief screening.  Concentration and persistence are likely to be based upon the claimant's current level of experienced pain." AR 79. Dr. Rogers' opinions were adopted, "based on objective med[ical] evidence." AR 83. State agency psychologist Dr. Eather opined that Plaintiff was "[m]oderately limited" in the ability to understand and remember detailed instructions, explaining that Plaintiff was "[a]ble to understand and remember simple as well as some more detailed instructions." AR 86. Plaintiff was "[m]oderately limited" in the ability to

carry out detailed instructions, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Eather explained further that concentration, persistence, and pace would be "diminished at times due to pain focus. However, claimant would be able to complete routine tasks over a normal 8-hour workday with customary breaks." *Id*.

Dr. Eather also opined that Plaintiff was "[m]oderately limited" in the ability to interact appropriately with the general public but "[n]ot significantly limited" in the ability to get along with coworkers or respond appropriately to supervisors. AR 86-87. He then explained that she was "capable of interacting w[ith] sup[ervisors]; capable of superficial interaction w[ith] coworkers and the general public." AR 87.

### 2. Martin Seidenfeld, Ph.D.

On reconsideration of Plaintiff's application, state agency psychologist Dr. Seidenfeld concurred with Dr. Eather's opinions, except that Dr. Seidenfeld opined that Plaintiff had no social interaction limitations. AR 101, 102.

### 3. ALJ's Analysis

The ALJ rejected Dr. Eather's opined social limitations as contradicted by his own evaluation, and rejected both doctors' opined mental limitations as inconsistent with the record, belied by Plaintiff's activities, and reliant on the rejected portion of Dr. Rogers' opinions. AR 29.

#### a) Social Limitations

The ALJ reasonably rejected Dr. Eather's assessment of Plaintiff's social abilities as self-contradictory. Dr. Eather's overall assessment was that Plaintiff had no more than "mild"

difficulties in maintaining social functioning. AR 82. While this portion of Dr. Eather's opinion addressed step three, which assesses social functioning more broadly than the itemized assessment required to determine the RFC, it is relevant to evaluating whether Dr. Eather's opinions as a whole were self-contradictory. *See* SSR 96-8p at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" than the step 3 assessment.). More specifically, when evaluating the RFC, Dr. Eather's opinion that Plaintiff was not significantly limited in the ability to get along with coworkers contradicted his imposition of a limitation to only superficial interactions with coworkers. AR 87. The Court concludes the ALJ did not err by declining to include a social limitation in the RFC.

### b) Concentration and Persistence

For the reasons discussed above with regard to Dr. Rogers' opinions, the Court also concludes that substantial evidence supports the ALJ's finding that Plaintiff's pain was adequately controlled. This was a sufficient reason to discount Dr. Eather's and Dr. Seidenfeld's opinions that Plaintiff's concentration and persistence would be diminished by her pain. The ALJ also did not err in discounting their opinions because they relied on Dr. Rogers' opinions, which were permissibly discounted. However, substantial evidence does not support the ALJ's finding that Plaintiff's activities of daily living contradicted the doctors' opinions of diminished concentration and persistence. The ALJ cited performing tasks independently, socializing with family and friends, and volunteering with church. AR 29; AR 27. The record does not demonstrate, however, that these activities were performed to such an extent or in such a way as to require great concentration and persistence in contradiction to Dr. Eather's and Dr. Seidenfeld's opinions. *See* AR 757 ("I go to church and am involved"), 760 ("I prefer to be with family and friends [but if] I don't feel good, I prefer to be by myself"), 800 ("able to be with

family, do shopping and light house work and … get out of bed"; "helping some" at church), 956 ("church involvement"). The error is harmless, however, because the ALJ provided multiple valid reasons to discount Dr. Eather's and Dr. Seidenfeld's opinions. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'").

The Court concludes the ALJ did not err by failing to include Dr. Eather's and Dr. Seidenfeld's opined limitations on concentration and persistence.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 4th day of April, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9